**HELLENIC LINES, LIMITED, Plaintiff,**
v.
**UNITED STATES of America, Defendant.**

United States District Court
S. D. New York.
Nov. 20, 1961.

Dow & Stonebridge, New York City, for plaintiff.

Robert M. Morgenthau, U. S. Atty., New York City, for defendant; Louis E. Greco, Atty. in Charge, Admiralty and Shipping Section, Clare E. Walker, Atty., Admiralty and Shipping Section, Dept. of Justice, New York City, of counsel.

McGOHEY, District Judge.

The plaintiff, under a shipping contract with the Military Sea Transportation Service, transported seven Army tanks aboard the S. S. Hellenic Beach from Beaumont, Texas, to Iskenderun, Turkey. The plaintiff seeks damages of $5,166.66 for (1) time lost due to detention of the vessel at Iskenderun from 0800, September 28, 1958, to 1000, October 2, 1958, and (2) cable charges incurred during the same period.

A petition was filed in the Court of Claims on October 5, 1960. By an order of the Court of Claims dated November 18, 1960, the case was transferred to the District Court pursuant to 28 U.S.C. § 1506.

The United States moves for summary judgment dismissing the complaint upon the ground that the suit was not filed in the Court of Claims within the two-year time bar of the Suits in Admiralty Act, 46 U.S.C.A. § 745. Because the plaintiff is a Greek corporation, the parties agree that the Tucker Act, 28 U.S.C. §§ 1346(a), 1402(a), is not applicable, Argonaut Nav. Co. v. United States, D.C., 142 F.Supp. 489, and that the Suits in Admiralty Act provides the exclusive remedy.

Article 5(d) of the shipping contract upon which this suit is brought provides, in part:

> "Any charges for detention incurred as a result of orders, actions or negligence of the operations listed elsewhere in this paragraph shall be for the account of the party whose orders, actions or negligence are responsible for such * * * detention."

The plaintiff alleges that the detention of its vessel was caused by the "failure and refusal" of the defendant's agents "to assign a berth to the carrying vessel and to commence prompt discharge of the subject cargo. * * .* " It is not disputed that such detention as occurred was terminated on October 3, 1958. However, plaintiff argues that the accrual of its cause of action in contract was delayed by the terms of the contracts' payments clause, Article 4(b), which provides:

"All charges and expenses incurred for the account of the Government as provided in this agreement and which are not paid directly by the Government or by the consignee shall be paid by the Contractor, who shall be reimbursed upon the presentation of properly supported and certified invoices."

This argument was made and rejected in States Marine Corp. of Delaware v. United States, 2 Cir., 283 F.2d 776, 777 in which libellant sought damages for the destruction of sweat battens during the discharge of its cargo. The libellant urged that "it was required by contract to submit its claim to administrative adjudication and therefore its cause of action for breach of contract did not arise until it had fully performed its duties under the contract and had exhausted the administrative remedies * * * provided for." The court held that the cause of action arose when the sweat battens were damaged.

"* * * despite any maritime contractual agreements that parties may enter into with the United States such contractual agreements may not extend the time-bar period of two years prescribed by Section 5 of the Suits in Admiralty Act within which suit against the United States may be commenced. * * * Jurisdiction to hear a case brought at a later date than two years after the cause of action arose cannot be awarded to the court by agreement." 283 F.2d at 778.

■ Accordingly, this cause of action arose no later than October 3, 1958, and the suit was not brought within the specified period.

The rule of States Marine does not appear to have been modified by American-Foreign Steamship Corp. v. United States, 2 Cir., 291 F.2d 598, 607 in which causes of action concerning "disputed interpretation of the terms of the charters themselves" were held to have accrued some time after the termination of the charter. The disputed terms involved accounting procedures which necessarily were postponed. Even while so holding, the court reiterated the principles which control in the instant case:

"But the type of controversies 'put off' must involve possible future disputes—those which, because of the accounting give-and-take accompanying this kind of charter arrangement, would present a measure of doubt concerning the exact time when a 'cause of action' arose. That sort of arrangement would not do violence to the Congressionally imposed built-in limitation; the deliberate postponing for ten years the trial of a clear and presently existing controversy most certainly *would* subvert the legislative scheme of a limited waiver of immunity. This is equally true whether the extension of time is interpreted so as openly to postpone the running of the limitations period—or whether the executive agency 'contracts' to refund overpayments at a time in the distant future, dependent upon the outcome of law suits brought at that later date on a claimed breach of the agreement to refund." 291 F. 2d at 607.

The plaintiff seeks to bring this case within the American-Foreign Steamship exception by contending that the interpretation of the relevant charter terms is in dispute. But there is no dispute as to the procedures called for by the terms. The parties disagree only as to the effect of the terms upon the accrual of the

cause of action—that is, a dispute not as to fact but as to law. That disagreement, to repeat, was settled by States Marine.

The motion for summary judgment dismissing the complaint is granted.

So ordered.