**FEDERAL COMMERCE AND NAVIGATION COMPANY, Limited, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. 67 Civ. 482.**

United States District Court
S. D. New York.

Sept. 26, 1969.

Hill, Betts, Yamaoka, Freehill & Longcope, New York City, for plaintiff; Donald B. Allen, New York City, of counsel.

Robert M. Morgenthau, U. S. Atty., for defendant; Louis E. Greco and Robert E. Coppola, New York City, of counsel.

## OPINION

TENNEY, District Judge.

The Federal Commerce and Navigation Company, Ltd., a Canadian corporation having an office and place of business in New York, New York, and defendant United States of America have each moved for summary judgment herein pursuant to Rule 56 of the Federal Rules of Civil Procedure.

The controlling facts are not disputed and may be briefly stated.

On November 3, 1964, plaintiff and defendant entered into a written charter party for the carriage of bulk corn aboard M/S SCOTTISH TRADER from Baltimore and/or Philadelphia to Saigon, South Vietnam. The charter party called for plaintiff to load 10,100 metric tons (9,938 long tons) of defendant's corn in bulk at Baltimore and/or Philadelphia. This represented approximately 62 per cent of the ship's capacity. Pursuant to the terms of this charter party, defendant delivered to plaintiff about 3,025 long tons of corn at Philadelphia and approximately 6,918 long tons of corn at Baltimore, which cargoes were loaded by plaintiff aboard M/S SCOTTISH TRADER. The shipper of the bulk corn was the United States Department of Agriculture, as agents for the Agency for International Development, an agency within defendant's Department of State.

Pursuant to Clause I of the charter party, plaintiff retained the option to "load other lawful non-injurious cargo provided such cargo is loaded prior to the above Corn and is discharged after Corn is discharged at Saigon." Exercising this option, plaintiff loaded 5,132 long tons of wheat at Albany, New York, on December 6–9, 1964, prior to the loading of defendant's corn. This wheat, which was not defendant's wheat but was loaded by plaintiff pursuant to arrangements with a third party, was to be discharged at Inchon, Korea, after the delivery of the corn at Saigon, and

was in fact discharged at Inchon on or about February 22, 1965.

Defendant was not advised by plaintiff either before or after loading defendant's cargo that any other cargo had been loaded aboard M/S SCOTTISH TRADER prior to the loading of defendant's corn, but the draft marks were clearly visible at the loading ports, and defendant accepted the ship as ready to receive cargo. Neither plaintiff nor the Master of M/S SCOTTISH TRADER questioned or objected to the loading of the full contract quantity of defendant's corn. At the time M/S SCOTTISH TRADER sailed from Baltimore, bound for Saigon, the departure draft was about 32.9 feet and, in addition to her cargo, she carried normal bunkers, water, supplies, etc., for the voyage.

The only means of ocean ingress to the Port of Saigon is the Long Tau River, the pilot station being located at Cape St. Jacques at the mouth of that river. The general conditions existing in and around the Port of Saigon, the approach thereto, and in particular the coral reef forming a bar two-thirds of the way up the Long Tau River were known by both parties to the transaction or could have been known by any prudent person.

On January 22, 1965, a meeting took place in Saigon for the purpose of discussing the arrival draft of M/S SCOTTISH TRADER, which meeting was attended by a representative of plaintiff's agent in Saigon, the East Asiatic Company, Ltd., and a representative of the United States Overseas Mission. After this meeting, plaintiff's Saigon agent sent a letter to the United States Overseas Mission on January 22, 1965, stating among other things that, in view of the fact that the vessel's draft exceeded the maximum draft permitted "the lighten-

ing operation of this vessel at Cape Saint Jacques entrance should be contemplated.—Accordingly we proposed you take the necessary steps, in accordance with clause 24 of the C/P, to discharge part of the cargo at Cape Saint Jacques anchorage in order to lighten the vessel until the limit permitting her to cross the bar safely." The letter further noted that defendant "maintained that as per clause I of the C/P, it is the responsibility of the vessel to arrange the loading and the stowing of the parcels to such a point that the vessel can proceed to Saigon and deliver same, always afloat, agreeable to Bs/L" and further that, referring to clause 24 of the charter party defendant mentioned "that as a matter of fact that lighterage and/or lightening are not required by [defendant], all expenses in this connection should be at Owners' account."

M/S SCOTTISH TRADER arrived at the mouth of the Long Tau River on January 26, 1965, with all of the aforesaid cargoes on board. At the time of her arrival her fresh water draft was 32.9 feet and the maximum fresh water draft which would permit a vessel to safely pass over the coral reef bar on January 26th was 28.2 feet; on January 27th it was 28.6 feet; and on January 30th it was 29.6 feet.

Although about twice a year ships drawing up to 30.10 feet can transit the channel, no vessel is known to have transited the river with a draft of 32.9 feet. Accordingly, in order to cross the coral reef bar it was necessary for M/S SCOTTISH TRADER to be sufficiently lightened by removal of cargo to reduce her draft below the maximum permitted.

Prior to arrival off the Long Tau River on January 24th and 25th, plaintiff sent defendant telegrams seeking the cooperation of defendant in obtaining lighterage of approximately 500 tons[1] and military protection. No re-

---

1. Although the exact amount unloaded has not been stipulated, the figure of 528 tons is used in defendant's brief and the figure of "approximately 500 tons" appears in plaintiff's message to defendant of January 24, 1965. Neither party disputes the fact that the amount lightened was substantially less than the cargo loaded at Albany. Nor does plaintiff dispute defendant's General Rule 9(g) statement

ply was forthcoming to either of these telegrams, and in order to deliver the corn at Saigon plaintiff had to discharge part of the cargo into barges at the mouth of the river and have the barges towed to Saigon for delivery at a cost of $5,311.47, which plaintiff paid. These lighterage services were contracted for by plaintiff on January 26, 1965 and were completed by January 30, 1965.

After lighterage, the vessel was able to cross the coral bar, and it proceeded to Saigon where the remainder of the cargo was discharged between January 31 and February 14, 1965. On leaving Saigon, the vessel sailed for Inchon, Korea, where the 5,132 tons of wheat which had been loaded at Albany were discharged and delivered.

Plaintiff subsequently submitted bills, vouchers and other data to support its claim. If the claim be valid and timely there is no dispute that it was properly presented to defendant. These bills characterize the charges in question as "Lighterage charges at Saigon as per clause 24 of the Charter Party".

Clause 24 of the charter party provides that "Lighterage and/or lightening, if any, at discharging port(s) is for account of Receivers and time so used to count as laytime."

Payment of the claimed sum of $5,-311.47 was refused by defendant by letter of August 26, 1965 on the ground that "[s]ince the charter party makes no provisions for a guaranteed maximum fresh water draft it was [plaintiff's] responsibility to determine the allowable maximum draft at the mouth of the Saigon River" and, further, that "the terms of the charter party concerning lighterage do not apply, as the vessel was

not lightened at the discharge port." The suit was filed for breach of the charter party on February 3, 1967 "as authorized by 28 U.S.C.A. 1346 and within the admiralty and maritime jurisdiction of the United States and of this Honorable Court." (Complaint, ¶ 3.)

It is defendant's contention that the claim herein is barred by the two-year statute of limitations of the Suits in Admiralty Act, 46 U.S.C. §§ 741, 745, and, further, that even if the claim is not barred there was no breach of the "always afloat" clause of the charter party (¶ 1) contrary to plaintiff's assertion, or, if there were such a breach, it was solely the result of plaintiff's negligence.

■ It seems clear that the remedy for an alleged breach of charter party by the United States is the Suits in Admiralty Act rather than the Tucker Act, 28 U.S.C.A. § 1346, upon which plaintiff has based its lawsuit. Prudential S. S. Corp. v. United States, 220 F.2d 655 (2d Cir. 1955). Indeed, were the action considered as having been brought under the latter act, it seems quite possible that the complaint would have to be dismissed. Hellenic Lines, Ltd. v. United States, 201 F.Supp. 10 (S.D.N.Y.1961); Argonaut Navigation Co., Inc. v. United States, 142 F.Supp. 489 (S.D.N.Y.1956).[2]

■■ Where the Suits in Admiralty Act applies, the two-year period of limitations set forth in Section 745 thereof is exclusive and controlling. Pennsylvania R. R. v. United States, 245 F.2d 321 (2d Cir. 1957). This two-year period of limitations is more than a statute of limitations. It is a condition attaching to the right to sue the sovereign, a condition precedent which must be complied with if the suit is to have any legal basis. Paschal v. North Atlantic & Gulf S. S.

---

that only 528 metric tons of cargo had to be removed, and, accordingly, for the purposes of this motion, it must be accepted as true.

2. The Court clearly has power to consider the action as brought under the Suits in Admiralty Act rather than the Tucker Act. Ira S. Bushey & Sons,

Inc. v. United States, 276 F.Supp. 518, 524 (E.D.N.Y.1967), aff'd, 398 F.2d 167 (2d Cir. 1968). It is perhaps significant that the period of limitations of the Tucker Act, under which Act plaintiff instituted this action, is six years as opposed to the two-year Suits in Admiralty limitation.

Co., 95 F.Supp. 293 (S.D.N.Y.1950). It is a limitation upon the jurisdiction of the Court to entertain the action. Sloand v. United States, 93 F.Supp. 83 (W.D. N.Y.1950). When the statutory period has elapsed the claim is not only unenforceable but is completely extinguished in view of the fact that when the United States, as a sovereign originally immune from suit, consented to be sued, it made as a condition of the right to sue that any suit so authorized had to be brought within the two-year period. States Marine Corp. of Del. v. United States, 283 F.2d 776 (2d Cir. 1960).[3] Plaintiff seeks to avoid the time-bar by stating that its claim for breach of contract is one for freight charges that accrued only after the Government refused payment.

■■ However, it is clear from the documentary evidence that the disputed charge is for lighterage, not freightage. The bills which were submitted clearly identified the charges as "Lighterage charges" and specifically cited clause 24 of the charter party as controlling. Plaintiff's attempt to characterize the repeated reference to lighterage charges and to clause 24 in the invoices as a "clerical error" is not persuasive. Lighterage is an incidental expense as opposed to freight or demurrage. Cf. Yone Suzuki v. Central Argentine Ry., 27 F.2d 795, 805 (2d Cir.), cert. denied, 278 U.S. 652, 49 S.Ct. 178, 73 L.Ed. 563 (1928). Moreover, no claim for freight or otherwise is extended by a contract provision requiring the submission of bills or vouchers for payment. States Marine Corp. v. United States, *supra* at 777 of 283 F.2d; Hellenic Lines, Ltd. v. United States, *supra* at 12 of 201 F.Supp.

In the instant case, the plaintiff hired lighters to remove 528 tons of cargo from M/S SCOTTISH TRADER on January 26, 1965 and the lighterage must have been completed by January 30, 1965 as the cargo was discharged at Saigon between January 31 and February 14, 1965.

Suit was not instituted until February 3, 1967. Accordingly, the debt for lighterage accrued more than two years prior to institution of suit.

■ Plaintiff makes a further attempt to avoid the bar of the statute by resort to the "always afloat" clause of the charter party. However, the breach of a "safe berth" or "always afloat" provision is a contract action for damages. Cities Serv. Transp. Co. v. Gulf Ref. Co., 9 F. Supp. 963, 964 (S.D.N.Y.1934), aff'd, 79 F.2d 521 (2d Cir. 1935); American President Lines, Ltd. v. United States, 208 F. Supp. 573 (N.D.Cal.1961). The inability of a vessel to clear the bar places the charterer in default at that time and answerable in damages. Paragon Oil Co. v. Republic Tankers, S. A., 310 F.2d 169, 173 (2d Cir. 1962), cert. denied, Yacimientos Petroliferas Fiscales v. Paragon Oil Co., 372 U.S. 967, 83 S.Ct. 1092, 10 L.Ed.2d 130, rehearing denied, 373 U.S. 947, 83 S.Ct. 1536, 10 L.Ed.2d 703 (1963); Tweedie Trading Co. v. New York & Boston Dyewood Co., 127 F. 278 (2d Cir.), cert. denied, 193 U.S. 669, 24 S.Ct. 852, 48 L.Ed. 840 (1903).

■ Such inability to cross the bar occurred on January 26, 1965. Accordingly, whether the claim be considered as one for lighterage or for breach of the charter party "safety afloat" clause, it accrued either on January 30, 1965 when the lighterage was completed or on January 26, 1965 upon arrival of the vessel at Cape Saint Jacques. Suit was not commenced until more than two years after either of these dates. Accordingly, this Court lacks jurisdiction to consider either the question as to who should bear the lighterage expenses or as to whether there was any breach of the charter party "safely afloat" clause, for when a "claim itself has been barred, a declaration of non-liability is also barred, except for non-liability which is itself based upon the bar of the limitations

3. It should be noted that the time-bar under the Suits in Admiralty Act is not tolled during the time that the claim is being administratively considered. In the instant case, there was no "disputes clause" in the charter party. States Marine Corp. v. United States, 283 F. 2d 776 (2d Cir. 1960).

**1030**

period." Luckenbach S. S. Co. v. United States, 312 F.2d 545, 549 (2d Cir. 1963).

Accordingly, plaintiff's motion is denied and defendant's cross-motion for dismissal is granted for the reasons hereinbefore set forth.

So ordered.